**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **JAMES RILEY,** | ) | **CASE NO. 8:09CV303** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **SUN LIFE AND HEALTH INSURANCE CO., f/k/a GENWORTH LIFE AND HEALTH INSURANCE CO., and GROUP LONG TERM DISABILITY INSURANCE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 32) submitted by Defendants Sun Life and Health Insurance Company f/k/a Genworth Life and Health Insurance Co. ("Sun Life") and Group Long-Term Disability Insurance, and the Motion for Summary Judgment (Filing No. 35) submitted by Plaintiff James Riley ("Riley"). For the reasons discussed below, the Defendants' Motion will be granted, and the Plaintiff's Motion will be denied.

**FACTS**

The statements of material facts in the parties' briefs (Filing Nos. 33, 36, 38, 39, 44 and 45), presented in compliance with NECivR 56.1, reveal that the following facts are not in dispute.

Riley has multiple sclerosis, and is disabled. He worked for Sumaria Systems, Inc. ("Sumaria"), until his multiple sclerosis precluded him from performing his job duties. He was a participant in Sumaria's employee welfare benefit plan, including Group Long-Term Disability Insurance (the "Plan"), governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"). The Plan was insured through GE

Group Life Assurance Company ("GE"), that later changed its name to Genworth Life and Health Insurance Company ("Genworth"), and then to Sun Life. The Plan provides that Sun Life is a "fiduciary" with respect to the Plan's insurance policies, as the term is used in ERISA, and has discretionary authority to interpret the meaning of the policies' terms and language. (Administrative Record, Filing Nos. 19-20 ("AR") p. 80.)

The Plan provides eligible participants with certain monthly disability payments that are reduced by "Other Income." The definition of "Other Income" includes the following language upon which the Defendants rely in this case:

> Any amount of disability or retirement benefits under:
> a) The United States Social Security Act to which;
> i) you are entitled; and
> ii) your Dependents may be entitled because of your disability or retirement;
> b) the Railroad Retirement Act;
> c) any other similar act or law provided in any jurisdiction.

AR p. 63.

Riley's entitlement to benefits under the Plan is not in dispute. At issue is whether certain benefits Riley receives from the Veterans Administration ("VA") were used, and continue to be used, improperly by Sun Life to offset his disability benefits under the Plan.[1] Riley seeks a variety of injunctive relief, all based on the allegedly improper offset of his VA benefits against his disability payments.

When granting the parties' joint motion for an extension of time for the filing of their respective reply briefs, the Court specifically requested that the parties refer the Court to

---

[1] Riley began receiving disability payments from Sun Life in January 2005. In December 2008, Sun Life recalculated Riley's benefits to offset his VA benefits against his disability payments, and claimed a net overpayment of $20,831.06.

the portion of the AR, if any, indicating the type of VA benefits Riley received that were offset against his disability benefits, or the specific statute through which such VA benefits were awarded to him. (Filing No. 43, p. 1). Riley has referred the Court to AR pp. 140-43, noting that his VA benefits are described as "original compensation benefits" (AR p. 140), and asserting that such benefits are for a service-related disability under 38 U.S.C. §1110, and not general disability. (Plaintiff's Reply Brief, Filing No. 45, pp. 1-2.) Sun Life notes that on February 25, 2005, Riley was asked whether he was eligible for, had applied for, or was receiving, any VA benefits, and he responded "No." (AR p. 103.) Sun Life contends that it requested "a complete copy of the Veteran's Administration Disability Income entitlement notice in order to determine the applicable net monthly benefit payable" as early as April 9, 2007, and continuing until August 22, 2008, when Riley's lawyer "finally sent to Sun Life some information regarding plaintiff's eligibility for VA benefits." (Defendant's Reply Brief, Filing No. 44, pp. 3-4.) Sun Life's contention is supported by the AR, pp. 136-38, 144-50, 184, 186, 188-92.

## STANDARDS OF REVIEW

### ***Summary Judgment***

Summary judgment is only proper when the Court, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor, determines the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009) (quoting *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987)). "Where the nonmoving

party will bear the burden of proof at trial on a dispositive issue, . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "a genuine issue of material fact such that [his] claim should proceed to trial." *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The nonmoving party is required to demonstrate a "genuine issue of material fact" that is outcome determinative–"a dispute that might 'affect the outcome of the suit under the governing law . . . .'" *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1030 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)). Thus, a "genuine issue" is more than "some metaphysical doubt as to the material facts," *Nitro Distrib.,* 565 F.3d at 422 (quoting *Matsushita*, 475 U.S. at 586-87), and "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Bloom*, 440 F.3d at 1029-30 (emphasis and quotation marks removed) (quoting *Anderson*, 477 U.S. 247-48).

In other words, "[o]n a motion for summary judgment, [the] facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. __, 129 S.Ct. 2658, 2677 (2009). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "genuine issue for trial"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see also Scott v. Harris,* 550 U.S. 372 (2007).

***ERISA***

"When a plan reserves 'discretionary power to construe uncertain terms or to make eligibility determinations . . . the administrator's decision is reviewed only for 'abuse . . . of his discretion'' by the district court." *Manning v. American Republic Ins. Co.*, 606 F.3d 1030, 1038 (8th Cir. 2010) (quoting *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 2005) (*en banc*) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989))). "Under the abuse of discretion standard, the court must affirm the plan administrator's interpretation of the plan unless it is arbitrary and capricious." *Id*. (citing *Midgett v. Wash. Group Int'l Long Term Disability Plan*, 561 F.3d 887, 896-97 (8th Cir. 2009)).

"To determine whether a plan administrator's decision was arbitrary and capricious, the court examines whether the decision was 'reasonable.'" *Id.* (citing *King*, 414 F.3d at 998-99). "Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." *Id.* "However, this standard does not apply if the plan administrator has committed 'a serious procedural irregularity' causing 'a serious breach

of the plan administrator's fiduciary duty to the claimant,' in which case the court applies a less deferential standard of review." *Id.* (quoting *Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir. 2006)).

"A conflict of interest exists when a plan administrator holds the dual role of evaluating and paying benefits claims, such as when the employer both determines eligibility for benefits and pays the benefits." *Id*. (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)). "If such a conflict exists, then a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits. The significance of this factor depends on the circumstances of the particular case." *Id*. at 1038-39. "When an insurer has a history of biased claims administration, the conflict 'may be given substantial weight.'" *Id.* at 1039. "When an insurer has taken steps to reduce the risk that the conflict will affect eligibility determinations, the conflict 'should be given much less weight.'" *Id.*

Where a plan administrator was both the evaluator of whether benefits were owed and the entity responsible for paying those benefits, and the record contains no evidence of biased claims administration, nor evidence the administrator's efforts to reduce the risk that its conflict would affect its decisions, a court should give the conflict "some weight." *Id.* (citing *Darvell v. Life Ins. Co. of North America*, 597 F.3d 929, 934 (8th Cir. 2010)).

**DISCUSSION**

The Plan gives Sun Life the discretionary power to interpret the meaning of the terms and language in the Plan's insurance policies, so this Court will review Sun Life's decision for abuse of discretion, and will affirm the decision unless it was arbitrary and

capricious. Sun Life held the dual role of evaluating and paying benefits claims, and the record contains no evidence of biased claims administration, nor evidence of any efforts made by Sun Life to reduce the risk that its conflict would affect its decisions, so the Court will give Sun Life's conflict "some" weight, but not substantial weight, when determining whether Sun Life abused its discretion.

Sun Life contends that the "sweeping language in subsection (c)" and the Fifth Circuit's opinion in *High v. E-Systems, Inc*., 459 F.3d 573 (5th Cir. 2006)[2], justify its decision to classify Riley's VA benefits as "Other Income," particularly under a deferential standard of review. (Defendants' Brief, Filing No. 33, p. 9).

Riley contends that his VA benefits should not offset his disability payments under the Plan, because nowhere in the Plan documents are VA benefits specifically mentioned, nor were they mentioned in the Application for Long Term Disability Benefits form (AR p. 20) or the Reimbursement Agreement form (AR p. 19) that the Defendants required him to complete when applying for disability benefits. Riley also suggests that Sun Life has offered conflicting explanations for the offset. Specifically, he notes that in August 2009 Sun Life alleged that he had been put on notice in February 2005 that VA benefits might be used to offset his disability payments when he was asked to complete a Personal Profile Evaluation form in conjunction with his Application for Long Term Disability Benefits.

---

[2] The ERISA plan in *High* was funded exclusively by employee contributions, not through an insurance policy, and the plan administrator who had discretionary authority to construe the plan's terms had no conflict of interest. Accordingly, the Fifth Circuit Court skipped the first step of a two-step analysis of the administrator's decision, by-passing the question of the whether the administrator's decision was legally sound under a fair reading of the plan, and determined only that the administrator had not abused its discretion by using the plaintiff's VA benefits to offset disability payments under an ERISA plan. *High*, 459 F.3d at 577.

(Letter from Sun Life to Riley's counsel, dated August 10, 2009, AR pp. 100-03). The Personal Profile Evaluation form asked Riley if he was eligible for, had applied for, or was receiving income from, "Other Disability Income benefit (Federal, State, VA)," to which Riley answered "No." (AR p. 103.) Finally, Riley relies on *Williams v. Group Long Term Disability Insurance & Reliance Standard Life Ins.,* No. 07C6022, 2008 WL 2788615 (N.D. Ill. July 17, 2008), for the proposition that VA benefits are "different than and independent of benefits under a group disability plan, retirement benefits or workers compensation benefits" and should not be used to offset disability benefits under the Plan.[3] (Plaintiff's Brief, Filing No. 39, p. 9-10, quoting *Williams,* 2008 WL 2788615 at *3.)

In essence, the Court must address the following question: Is it reasonable for a plan administrator to conclude that retirement or disability benefits received through veterans' benefits statutes, 38 U.S.C. § 101 *et seq*., are "similar to" retirement or disability benefits received through the Social Security Act, 42 U.S.C. § 301, *et. seq*., and the Railroad Retirement Act, 45 U.S.C. § 231 *et seq*.?

Federal statutes concerning veterans' benefits define a broad variety of benefits available to veterans and their relatives or dependents. These benefits include retirement pensions and annuities, service-connected disability benefits, and need-based disability benefits for veterans who have become permanently and totally disabled due to non-

---

[3] The analysis in *Williams* is of limited help, because the opinion does not describe the type of VA benefits that the plaintiff was receiving that were offset against his benefits under the group disability plan. If the plaintiff's VA benefits were based on a retirement pension or annuity, or a service-related disability that was different from the disability that led to his receipt of benefits under the ERISA plan, then this Court would agree that such VA benefits were "different than and independent of" benefits designed to compensate the plaintiff for the loss of his stream of income from his employment.

service-connected disabilities. *See*, *e.g.*, 38 U.S.C. § 1521. The Social Security Act and Railroad Retirement Act also provide a broad array of benefits and eligibility requirements.

In determining whether any two things are similar, one first must ask: "Similar for what *purpose*?" The Plan provides benefits, based on a percentage of past earnings, for employees who become disabled and cannot work. In this manner, the Plan insures against a certain risk of loss, i.e.., the loss of a stream of earned income due to the participant's inability to work. The benefits under the Plan are not need-based, in that an eligible participant may have an unlimited net worth and may enjoy an unlimited amount of income from a variety of sources, such as stocks, bonds, annuities, and real estate, without forfeiting benefits. Read in context, the "Other Income" section of the Plan, at AR p. 63, lists sources of income that would tend to compensate for the same loss as that covered by the Plan, i.e., the participant's loss of his stream of earned income.[4]

If a participant has a right to receive certain income that has no relationship whatsoever to the loss of his stream of earned income, it is not reasonable to consider those benefits as "Other Income" under the Plan. In other words, if Riley receives VA benefits in the form of a retirement pension or annuity, not linked to his disability or loss of income, it is not reasonable to consider that benefit "Other Income" under the Plan, because it in no way compensates him for the stream of income he lost due to his disability. If Riley receives VA benefits due to some service-connected disability unrelated

[4] "Other Income" includes workers' compensation benefits, benefits available under occupational disease laws, unemployment compensation, formal or informal salary continuance plans, disability or loss-of-income benefits, retirement benefits from the participant's "Employer" or any governmental retirement system "as a result of" the participant's job with the "Employer," and certain lump-sum payments, "only to the extent that any such damages or settlement represent compensation for your loss of income."

to his multiple sclerosis, it is not reasonable to consider that benefit "Other Income" under the Plan, because it does not compensate for the stream of earned income he lost due to the disability that ended his work at Sumaria. If, on the other hand, Riley sought and obtained VA benefits based on the same non-service-connected permanent and total disability that ended his work at Sumaria, then Sun Life's determination that such benefits are "Other Income" under the Plan may be reasonable, because such VA benefits serve to compensate Riley for the same risk of loss covered by the Plan, *i.e.*, the loss of a stream of earned income that he enjoyed before his disability.

Although Riley urges the Court to conclude that his VA benefits are for a service-connected disability under 38 U.S.C. § 1110, nothing in the AR supports that conclusion. The AR does reveal that Sun Life attempted to gather documentation from Riley regarding the nature and extent of his VA benefits, and had difficulty obtaining any response. At this stage of the proceedings, the Court is not at liberty to gather additional evidence. *SeeBrown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998) (Where plaintiff offered no explanation as to why he could not have provided insurer with evidence in a timely manner, an offer of additional evidence outside the administrative record will not be accepted, and its consideration is specifically "ruled out on deferential review[.]").

**CONCLUSION**

Applying a deferential standard of review to Sun Life's decision, and giving some weight to its apparent conflict of interest as both the insurer and the Plan fiduciary, the Court concludes that Sun Life's decision to off-set Riley's disability benefits by his VA benefits was not an abuse of discretion, arbitrary and capricious, or unreasonable. Riley

had an opportunity to demonstrate that such benefits were unrelated to the disability that led to the loss of his stream of income from Sumaria and his receipt of disability benefits under the Plan, and he did not provide such evidence to Sun Life for the Administrative Record. Absent such documentation, it was reasonable for Sun Life to infer that Riley's VA benefits were related to the same disability that caused him to be unable to work at Sumaria and that led to his receipt of disability benefits under the Plan. Accordingly, Sun Life's interpretation of the "Other Income" language of the Plan document, resulting in the off-set of the VA benefits, was not unreasonable.

IT IS ORDERED:

1. The Defendants' Motion for Summary Judgment (Filing No. 32) is granted;
2. The Plaintiff James Riley's Motion for Summary Judgment (Filing No. 35) is denied; and
3. A separate Judgment will be entered.

DATED this 18th day of June, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge