IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES RILEY, | ) | CASE NO. 8:09CV303 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM |
| SUN LIFE AND HEALTH INSURANCE | ) | AND ORDER |
| CO., f/k/a GENWORTH | ) | |
| LIFE AND HEALTH INSURANCE | ) | |
| CO., and GROUP LONG TERM | ) | |
| DISABILITY INSURANCE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Plaintiff James Riley's Motion to Alter or Amend the Court's Judgment (Filing No. 74) and his Motion for Attorney's Fees (Filing No. 70). The Court has considered the parties' briefs (Filing Nos. 71, 75, 76, 78, 81, and 83) and the accompanying Indexes of Evidence (Filing Nos. 72, 76-1, 76-2, 79, 82, and 84). For the reasons discussed below, Riley's Motion to Alter or Amend the Court's Judgment (Filing No. 74) is granted in part and denied in part, and Riley's Motion for Attorney's Fees (Filing No. 70) is granted.

**PROCEDURAL HISTORY**

Defendant Sun Life and Health Insurance Company ("Sun Life") is the underwriter of a group insurance policy that provides long-term disability benefits to the Group Long Term Disability Insurance Plan (the "Plan"). On August 31, 2009, Riley filed suit in this Court, alleging that Sun Life inappropriately reduced Riley's long-term disability benefits under the Plan by deducting the amount of benefits he received from the Veterans Administration ("VA"). (Filing No. 1, Complaint, at ¶¶ 9–19.) On June 18, 2010, this Court entered summary judgment in favor of Defendants and dismissed Riley's Complaint with

prejudice.  (Filing Nos. 46 and 47.)  Riley appealed, and on October 7, 2011, the Eighth Circuit entered its Opinion and Judgment reversing this Court's decision and remanding for proceedings consistent with its Opinion.  (Filing Nos. 58 and 59.)  The Eighth Circuit also entered an Order granting, in part, Riley's Motion for Appellate Attorney Fees and Costs.  (Filing No. 65.)  On December 1, 2011, this Court entered its Judgment in favor of Riley and ordered Defendants to pay those appellate fees and costs.  (Filing No. 67.)

## DISCUSSION

**I.      Riley's Motion to Alter or Amend the Court's Judgment Under Fed. R. Civ. P. 59(e)**

"Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1, pp. 127–28 (2d ed.1995) (footnotes omitted)).  District courts have broad discretion in determining whether to grant or deny Rule 59(e) motions. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir.2006).

As an initial matter, Defendants ask the Court to stay its judgment so that they can petition the United States Supreme Court for a writ of certiorari.  (Filing No. 78, at 5–6.)  The Court declines to stay its judgment.  As Defendants note, they may seek a stay of judgment in the Supreme Court pursuant to 28 U.S.C. § 2101(f) and Sup. Ct. R. 23.

**A.     The Amount of Plan Benefits Owed to Riley**

Riley moves the Court to amend its previous Judgment of December 1, 2011 (Filing No. 67) to require Defendants to pay Riley: (1) amounts due under the Plan, totaling $45,872.00,[1] along with prejudgment and postjudgment interest at the current legal rate; (2) Riley's attorney's fees incurred in bringing his case before this Court; and (3) all other further relief the Court deems just and equitable. (Filing No. 74, Plaintiff's Motion to Amend, at ¶ 13; Filing No. 83, Plaintiff's Reply, at 3–4.) Riley's Motion for Attorney Fees is addressed below.

The following facts are not in dispute. Riley first became eligible for long term disability benefits under the Plan on January 23, 2005. (Filing No. 19-1, Administrative Record 1 (hereinafter, "AR"); Filing No. 19-4, AR 123.) For that partial month, he was paid a gross benefit of $615.00. (Filing No. 19-4, AR 123.) Riley's gross monthly benefit (for an entire month) was (and continues to be) $2,050.00. (*Id.* at AR 123, 126.)

At some point, Riley began receiving Social Security Disability Income (SSDI) benefits. Under the Plan, these SSDI payments qualified as "Other Income." (Filing No. 19-3, AR 63.) As such, they were an offset that was subtracted from Riley's gross monthly benefit amount. (*Id.* at AR 61.) Sun Life determined that the net offset for Riley's monthly SSDI benefits was $1,299.00. (Filing No. 19-4, AR 123, 126.) Taking this offset into

---

[1] Riley originally requested $78,572.00, but this failed to take into account the fact that : (1) Sun Life had previously paid $30,066.00; (2) benefits for January 2005 were due for only part of the month; and (3) Riley originally claimed that the offset for Social Security Disability Insurance benefits should have started in January of 2006, but now claims it should have started in December of 2005. (*Compare* Filing No. 75, at 2 *with* Filing No. 83, at 3.)

3

account, Riley was (and continues to be) entitled to a net monthly benefit of $751.00 ($2,050.00 – $1,299.00).

The parties dispute when Riley began to receive SSDI benefits, or, more precisely, when the Plan entitled Defendants to begin offsetting those benefits. Although this is the first time the issue has been raised in the proceedings before this Court, Riley and Defendants have disputed the issue for years. Riley contends that he did not begin to receive SSDI benefits until December of 2005. (Filing No. 83, at 2–3.) He points to a letter from the Social Security Administration, dated March 21, 2006, which states: "Beginning December 2005, the full monthly Social Security benefit before any deductions is . . . $1352.00." (Filing No. 19-1, AR 3.)

Defendants contend that Riley's SSDI benefits were retroactively awarded in April of 2005, or, in any event, that under the Plan, Sun Life was entitled to offset the SSDI benefits beginning in April of 2005. (Filing No. 78, at 1–4.) Defendants cite a form, apparently filled out by Riley,[2] that states the following: under the header "SOCIAL SECURITY," a box marked "SSDI" is checked; under "Effective Date" is written "4/05;" and under "Amount" is written "1299-." (Filing No. 19-1, AR 1.) Defendants point out that, under the Plan, claimants' benefits may be subject to offset for "other income" that they are yet to receive. Defendants direct the Court to the following provisions of the Plan:

> **Application for Other Income**
> If you, your spouse, child, or children are or become eligible for any Other Income, you, your spouse, child, or children must:
>     1. Apply for such Other Income; and

---

[2] The form is not signed by Riley, but he does not dispute the authenticity of the form or suggest it was filled out by anyone else. The form has no date except at the bottom of the form, which states "Print Date: 03/07/2005."

4

>> 2. Cooperate with us in making reasonable efforts to reapply for or appeal the denial of any application for such Other Income.

Until approval or denial is made we will, at your option, make payments under either Method A or B below:

Method A: We will estimate the amount of Other Income you will receive and reduce your Monthly Benefit by this amount. If Other Income benefits are estimated, your Monthly Benefit will be adjusted when we receive Proof of the amount awarded or that benefits have been denied. If your application is denied, the amount estimated will be returned to you in a lump sum. During subsequent appeals Method B will be used.

Method B: Subject to your written agreement, we will pay your Monthly Benefit with no reduction for estimated Other Income until Social Security or any other agency reaches a decision. When a decision is reached, you must send us a copy of such decision and reimburse us in full for any overpayment we have made as a result of that decision, regardless of whether or not your coverage is still in force on the date you recover such amount. Additionally, if an award is made, we will reduce your Monthly Benefit by the amount of Other Income you receive, in accordance with the terms of the policy. If you choose this Method B and have not applied for Social Security or other benefits to which you may be entitled, you must agree to apply for such benefits immediately. If you do not apply we will automatically use Method A.

. . .

**Lump Sum Payments**
If any Other Income is paid in a lump sum, we will reduce the Monthly Benefits paid or payable by the monthly equivalent of that sum as determined below:
1. Over the period of time for which the sum is given, if a period of time is stated; or
2. If such period of time cannot be determined we will prorate the lump sum over a period of 60 months from the date of the lump sum award.

(Filing No. 19-3, AR 64.)

Sun Life notified Riley of these policy provisions in a letter of March, 2005, informing him that his claim for long term disability benefits had been approved. (Filing No. 20-5, AR 354–55.) The letter advised that it was Sun Life's practice to estimate the amount of

5

participants' SSDI benefits and reduce their monthly benefits by that amount, and explained that if Riley wished to avoid this preemptive offset, he could provide Sun Life a copy of his receipt of application for SSDI benefits.  (*Id.* at 355.)

From August of 2005, to April of 2006, Sun Life and Riley's attorney, Mark Peterson, exchanged letters discussing what, if any, SSDI benefits Riley was receiving, and how they should be handled under the plan.  (Filing No. 20-3, AR 319; Filing No. 19-1, AR 5–8; Filing No. 20-3, AR 315, 304; Filing No. 19-1, AR 2–4.)  In April of 2006, Sun Life notified Riley that it had determined that Riley had received a SSDI award beginning in April of 2005.  (Filing No. 20-3, AR 301.)  Sun Life also notified him that it had failed to offset his SSDI benefits from April 2005 to March of 2006, and requested that Riley pay Sun Life back the surplus.  (*Id.*)  Finally, the letter stated that Sun Life was "pend[ing]" Riley's benefits beyond March 31, 2006.  (*Id.*)

In a letter dated May 5, 2006, Peterson responded, requesting documentation of the overpayment and stating that it was his view that Sun Life had waived its claim to recovery or offset of the funds.  (*Id.* at 294.)  Sun Life responded in a letter dated July 10, 2006, which quoted the provisions of the Plan set out above.  (*Id.* at 291–93.)  In November of 2006, Sun Life again requested repayment of the amounts claimed to be overpaid.  (*Id.* at 276–77.)  The letter also stated: "We respect your right to dispute the offset against SSDI benefits as indicated in your letter dated August 4, 2006.[3]  However you have not contacted our office to formally appeal or offer to discuss a repayment agreement." (*Id.*

---

[3] This letter did not dispute Sun Life's decision to offset Riley's SSDI benefits, but merely stated that Peterson was out of the office and looked forward to discussing the issue.  (Filing No. 20-3, AR 290.)

6

at 276.)  Defendants argue that Riley failed to exhaust his administrative remedies and is therefore barred from challenging Sun Life's determination of when to begin offsetting his SSDI benefits.

Riley brings this action under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), which allows a plan participant to bring civil actions "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  However, before filing suit, claimants must exhaust the administrative remedies required under their plan.  *Angevine v. Anheuser-Busch Cos. Pension Plan*, 646 F.3d 1034, 1037 (8th Cir. 2011).  This exhaustion requirement is not found in the text of ERISA, but is a judicially-created doctrine that serves important purposes, including, "'giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, decreasing the cost and time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits.'" *Id.* (quoting *Galman v. Prudential Ins. Co. of Am.*, 254 F.3d 768, 770 (8th Cir.2001)).  The exhaustion requirement will be excused only when the claimant can show that "pursuing an administrative remedy would be futile or there is no administrative remedy to pursue." *Id.*

Riley asks this Court to determine the proper offset for his SSDI benefits under the Plan.  This amounts to a claim to "recover benefits due to him under the terms of his plan" under 29 U.S.C. § 1132(a)(1)(B).  Riley does not dispute this, or that the law requires exhaustion of administrative remedies as required by the Plan.  Instead, he argues simply

7

that he has "previously raised" the issue. (Filing No. 83, at 2, n.3.) Riley points to a letter from February of 2005, in which Peterson requested information regarding Riley's benefits and offsets (Filing No. 19-1, AR 24), and the May 5, 2006, letter from Peterson requesting documentation of the overpayment and stating that Sun Life had waived its claim to recovery or offset of the funds. (Filing No. 20-3, AR 294.) However, these letters do not change the fact that the administrative record contains no indication that Riley appealed this determination or otherwise exhausted his administrative remedies.

The Plan contains provisions explaining that exhaustion of administrative remedies is required before claimants may bring suit under ERISA. (Filing No. 19-4, AR 97–98.) The Plan states that claims for benefits must be submitted to the insurer, and lays out the procedure for appealing adverse determinations. (*Id.*) Riley followed these provisions when he appealed Sun Life's determination to offset his VA benefits. (*Id.* at AR 104–117.) His appeal mentions, in passing, that Sun Life also offset Riley's SSDI benefits, but then states that "[t]he issue on appeal is simply whether Sun Life is entitled to offset Mr. Riley's long-term disability benefits against the VA benefits he earned . . . ." (*Id.* at 104–105.) The offset for SSDI benefits is not mentioned again.

Riley has failed to exhaust his administrative remedies with regard to offsets for his SSDI benefits. Accordingly, he may not use this suit to challenge Sun Life's determination of the proper offset for SSDI benefits. Riley's damages will be computed with the SSDI offset beginning in April of 2005, per Sun Life's determination.

that he has "previously raised" the issue. (Filing No. 83, at 2, n.3.) Riley points to a letter from February of 2005, in which Peterson requested information regarding Riley's benefits and offsets (Filing No. 19-1, AR 24), and the May 5, 2006, letter from Peterson requesting documentation of the overpayment and stating that Sun Life had waived its claim to recovery or offset of the funds. (Filing No. 20-3, AR 294.) However, these letters do not change the fact that the administrative record contains no indication that Riley appealed this determination or otherwise exhausted his administrative remedies.

The Plan contains provisions explaining that exhaustion of administrative remedies is required before claimants may bring suit under ERISA. (Filing No. 19-4, AR 97–98.) The Plan states that claims for benefits must be submitted to the insurer, and lays out the procedure for appealing adverse determinations. (*Id.*) Riley followed these provisions when he appealed Sun Life's determination to offset his VA benefits. (*Id.* at AR 104–117.) His appeal mentions, in passing, that Sun Life also offset Riley's SSDI benefits, but then states that "[t]he issue on appeal is simply whether Sun Life is entitled to offset Mr. Riley's long-term disability benefits against the VA benefits he earned . . . ." (*Id.* at 104–105.) The offset for SSDI benefits is not mentioned again.

Riley has failed to exhaust his administrative remedies with regard to offsets for his SSDI benefits. Accordingly, he may not use this suit to challenge Sun Life's determination of the proper offset for SSDI benefits. Riley's damages will be computed with the SSDI offset beginning in April of 2005, per Sun Life's determination.

The following table sets forth the amounts at issue. The first column of figures shows the payments Defendants have actually made to Riley.[4] The second column of figures shows the amounts that Defendants were obligated to pay Riley, without any offset for VA benefits, but including the offset for SSDI benefits that Sun Life determined was appropriate under the Plan.

| Date | Actual Payments Made to Riley | Amount Sun Life Owed Riley |
|---|---:|---:|
| Jan. 2005 | $615 | $615 |
| Feb. 2005 | $2,050 | $2,050 |
| Mar. 2005 | $2,050 | $2,050 |
| April 2005 | $2,050 | $751 |
| May 2005 | $2,050 | $751 |
| June 2005 | $2,050 | $751 |
| July 2005 | $2,050 | $751 |
| Aug. 2005 | $2,050 | $751 |
| Sep. 2005 | $2,050 | $751 |
| Oct. 2005 | $2,050 | $751 |
| Nov. 2005 | $2,050 | $751 |
| Dec. 2005 | $2,050 | $751 |
| Jan. 2006 | $2,050 | $751 |
| Feb. 2006 | $2,050 | $751 |

---

[4] The payments made to Riley are based on figures contained in a worksheet of benefits produced by Defendants. (Filing No. 79-1, Benefits Worksheet at 2.) Riley properly points out that this worksheet is not authenticated by a supporting affidavit, as required by NeCivR 7.0.1(b)(2)(C). Due to Riley's present illness, he was unable to assist his counsel in determining what payments were actually made to him. (Filing No. 83, at 2 n.4.) However, Riley's counsel have based their calculations upon the amounts shown in this worksheet, and the Court will do the same. (*Id.*)

| Mar. 2006[5] | $2,050 | $751 |
|---|---|---|
| Apr. 2006 | $0 | $751 |
| . . . | . . . | . . . |
| Dec. 2011 | $0 | $751 |

According to Sun Life's determination of the SSDI offset, Riley was overpaid by $1,299 a month, from April of 2005, to March of 2006, for a total overpayment of $15,588. From April of 2006, to December of 2011, the parties agree that Riley should have been paid $751 a month until the present. For some reason, Riley did receive one payment of $751, in December of 2006, which will be deducted from the amounts owed to him. The Court will discuss the total amounts owed below, after taking prejudgment interest into account.

**B.   Prejudgment Interest**

The Court will grant Riley's request for prejudgment interest on the amounts due to him under the plan at the current legal rate. (Filing No. 83, at 3.) Prejudgment interest serves to make claimants whole where they have been denied the use of money they were legally due, and "should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986).

The Eighth Circuit has held that 28 U.S.C. § 1961, which governs postjudgment interest, also "provides the proper measure for determining" the rate of prejudgment interest on claims for past benefits under ERISA. *Mansker v. TMG Life Ins. Co.*, 54 F.3d

---

[5]   The payment for March apparently was made in April.

1322, 1331 (8th Cir.1995); *accord Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 969 (8th Cir. 2004) (using method set forth in § 1961 to calculate prejudgment interest for ERISA benefits).

28 U.S.C. § 1961(a) provides that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [sic] the date of the judgment." This method yields a rate of 0.11% in the present case. The parties have not expressed a preference for how the interest is to be applied, so the Court will apply annual compounding to the benefits due to Riley, as they became due, from April of 2006 to December of 2011. Defendants have already paid the benefits for the partial month of January 2005 through March 2006. This yields a total of $51,256.68.

This leaves the question of how the $15,588 overpayment should be handled. Riley has asked the Court to determine his entitlement to benefits under the Plan. Riley has failed, however, to exhaust his administrative remedies with regards to Sun Life's determinations of an appropriate SSDI offset. The Court will deduct the $15,588 from the total amount Defendants owe Riley, for a total of $35,668.68.

## II.   Riley's Motion for Attorney's Fees

Riley seeks an award of attorneys' fees, pursuant to Fed. R. Civ. P. 54(d)(2) and 29 U.S.C. § 1132(g)(1). Riley requests $34,209.50 for litigating this matter before this Court,[6] and $1,290.00 for preparing his Motion for Attorneys' Fees, for a total of $35,499.50.

---

[6] This amount takes into consideration $2,627.00 voluntarily deducted by Riley for time spent by an associate-in-training who prepared an initial planning report.

11

Defendants dispute that Riley is entitled to attorneys' fees and argue that the amount requested is unreasonable.

29 U.S.C. § 1132(g)(1) provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." A party claiming fees under § 1132(g)(1) must achieve "'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). Riley has satisfied this requirement.

In determining whether to award attorney's fees, district courts should consider the following factors:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Martin v. Ark. Blue Cross and Blue Shield*, 299 F.3d 966, 969 n.4 (8th Cir. 2002) (citing *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984)). These factors are not exclusive and are only "general guidelines" that are to be considered along with other relevant factors. *Id.* at 972.

First, Riley argues, and Defendants do not dispute, that Riley sought to "resolve a significant legal question regarding ERISA," *i.e.*, determining whether the Veterans' Benefits Act is similar to the Social Security Act or the Railroad Retirement Act for purposes of a plan subject to ERISA. Second, Riley offers evidence that Sun Life's parent

12

company is well-positioned to pay attorney fees. (Filing No. 71, at 5–6.) While this is not necessarily evidence that Sun Life is well-positioned to pay, Defendants do not dispute their ability to pay. (Filing No. 76, at 5.) With respect to the other factors, the Court finds that they weigh neither in favor of, nor against, the award of attorney fees.[7]

Having considered the above factors, the Court finds that an award of attorneys' fees is appropriate. The Court must next determine what constitutes an appropriate amount. "'The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.'" *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir.2005) (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir.2002)). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Id.*

Riley was represented by four attorneys, whose average hourly rates are as follows: Ms. Kane: $290; Mr. Peterson: $345; Mr. Padios: $212; and Ms. Boswell: $185. (Filing No. 72-1, Declaration of Nora Kane ("Kane Decl.") at ¶ 18.) In support of the requested rates, Riley has submitted a sworn declaration of his attorney, Nora Kane, which details her education and litigation experience, as well as that of the other attorneys, whose education, background, and expertise are known to her. (*Id.* at ¶¶ 1–5, 7–11.) Ms. Kane also states she is familiar with the local and national legal markets, as well as the prevailing rates for attorneys primarily engaged in ERISA litigation, and that the rates requested by her and

---

[7] With respect to the "relative merits" of the parties' positions, Sun Life's position had substantial merit, as explained in this Court's initial ruling, and the dissenting opinion of Circuit Judge Colloton.

Riley's other attorneys are reasonable. (*Id.* at ¶¶ 6, 13–18.) Riley also offers declarations from Mark. D. DeBofsky, a Chicago-based attorney with national experience litigating ERISA cases, (Filing No. 72-3, Declaration of Mark D. DeBofsky, at ¶¶ 1–3 ), and Marcia Washkuhn, an Omaha-based attorney with experience litigating ERISA cases (Filing No. 72-5, Declaration of Marcia Washkuhn, at ¶¶ 1–6). Both attorneys state they are familiar with the prevailing rates charged by attorneys in comparable cases, and that Riley's requested rates are fair, reasonable, and consistent with rates charged by other attorneys of comparable experience. (DeBofsky Decl., at ¶¶ 6–7; Washkuhn Decl., at ¶¶ 8–10.) Ms. Washkuhn's experience in the Omaha legal community provides a basis for her knowledge of prevailing rates therein. The Court finds that the requested rates are reasonable.

Defendants reserve most of their challenges for the number of hours billed by Riley's attorneys. Defendants claim that because many the entries for Ms. Kane and Mr. Peterson are billed in half-hour increments, the hours requested are likely inflated. (Filing No. 76, at 8–9.) The Court acknowledges that even billing in *quarter*-hour increments has been looked upon with disfavor, as it risks bill inflation. *Republican Party of Minn. v. White*, 456 F.3d 912, 920 (8th Cir. 2006). Defendants also allege that Riley's counsel have "block billed" their entries, but, as with their complaints regarding billing increments, Defendants fail to cite any specific examples. (Filing No. 76, at 9.) Finally, Defendants point to a handful of incidents they claim show over-staffing and excessive or redundant hours. (*Id.* at 9–10.) The Court finds that the incidents cited do not constitute excessive or redundant hours.[8]

---

[8] Sun Life objects to the amount of time spent preparing a motion to conduct discovery. The motion and brief in question (Filing Nos. 21 and 22) related to the

14

There are a number of factors district courts examine to determine if a request for attorneys' fees is reasonable and whether an upward or downward adjustment from the lodestar amount is warranted. *Easley v. Anheuser-Busch, Inc.*, 758 F.2d 251, 264 n.25 (8th Cir. 1985) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)) (setting forth the twelve *Johnson* factors).  Of these twelve factors, the Court considers the following to be the most pertinent, under the circumstances of this case: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the customary fee; (5) the amounts involved and the results obtained; (6) the experience, reputation, and ability of the attorneys; and (6) the "undesirability" of the case.

Having considered these factors, the Court finds that Riley's requested fees are reasonable, and no departure from the lodestar amount is warranted.  The Court will award Riley $35,499.50 in attorneys' fees. Post-judgment interest on attorneys' fees is mandatory under 28 U.S.C. § 1961.  *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275-77 (8th Cir. 1991).  This interest begins to accrue "from the date the court recognizes the right to such fees in a judgment."  *Id.* at 1277 (quotation omitted).  In this case, postjudgment interest shall accrue from the date of this Order and the accompanying Judgment.  Accordingly,

---

completeness of the administrative record and what basis existed for Sun Life's offset determinations. (Filing No. 22, at 4.) Given the central nature of these issues to this case, the Court finds that the hours claimed were not excessive.  Similarly, Sun Life objects to the amount of time Riley's counsel spent preparing his Reply Brief in support of his Motion for Summary Judgment (Filing No. 45).  However, this Court took the step of requesting the parties to provide additional information in their reply briefs (Filing No. 43, Order of May 28, 2010, at 1–2), and does not find the hours claimed to be excessive.  Finally, Sun Life claims that Riley's counsel billed an excessive number of hours preparing an initial planning report.  Riley, however, has voluntarily deducted the bulk of these hours. (Filing No. 81, at 8.)

IT IS ORDERED:

1. The Motion to Alter or Amend the Court's Judgment (Filing No. 74) filed by Plaintiff James Riley, is granted in part, and denied in part, as follows:

    a. Defendants Sun Life and Health Insurance Co., f/k/a Genworth Life and Health Insurance Co., and Group Long Term Disability Insurance shall pay Plaintiff $35,668.68 (inclusive of prejudgment interest), together with postjudgment interest on all unpaid amounts, from the date of today's Judgment until satisfaction, in accordance with 28 U.S.C. § 1961(a); and

    b. Defendants will continue to pay Plaintiff benefits under the Plan, with no offset for the amount of benefits he receives through the Veteran's Administration, so long as Plaintiff meets the Plan's terms and conditions for receipt of benefits; and

2. The Motion for Attorney Fees (Filing No. 70) filed by Plaintiff James Riley is granted, and Defendants shall pay Plaintiff $35,499.50 in attorneys' fees, together with postjudgment interest on all unpaid amounts, from the date of today's Judgment until satisfaction, in accordance with 28 U.S.C. § 1961(a); and

3. Costs have previously been taxed against Defendants in the amount of $1,307.81, per the parties' Stipulation (Filing No. 69) and the previous Order by the Clerk of the District Court (Filing No. 80).

DATED this 19th day of January, 2012.

                                               BY THE COURT:

                                               s/Laurie Smith Camp
                                               Chief United States District Judge